**HAGNER & ZOHLMAN, LLC**
John A. Zohlman, III, Esq.
Thomas A. Hagner, Esq.
57 Kresson Road
Cherry Hill, New Jersey 08034
Tel: (856) 663-9090
Fax: (856) 663-9199
Email: jzohlman@hzlawpartners.com
Email: tahagner@hzlawpartners.com

**DENENBERG TUFFLEY PLLC**
Paul A. Casetta, Esq.
*Pending Pro Hac Vice Admission*
Michael R. Marx, Esq.
*Pending Pro Hac Vice Admission*
28411 Northwestern Hwy., Suite 600
Southfield, Michigan 48034
Tel: (248) 549-3900
Fax: (248) 593-5808
Email: pcasetta@dt-law.com
Email: mmarx@dt-law.com

*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, as subrogees of O.K. INDUSTRIES, INC. | CIVIL ACTION |
| Plaintiffs, | Case No: 17-cv-_____ |
| v. | |
| CRYOVAC, INC., SEALED AIR, INC., d/b/a CRYOVAC INC., and SOUTHEAST POULTRY, INC. | |
| Defendants. | |

### COMPLAINT AND JURY DEMAND

Plaintiff Liberty Surplus Insurance Corporation, as Subrogee of O.K. Industries, Inc., by and through their attorneys (Hagner & Zohlman, LLC), for their Complaint against Defendants

1

Cryovac, Inc., Sealed Air, Inc. d/b/a Cryovac, and Southeast Poultry, Inc., state and allege as follows:

## JURISDICTION

1. This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(a)(2), as the amount in controversy exceeds $75,000.00 and the claims alleged herein are between citizens of foreign jurisdictions and citizens of different States.

## VENUE

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this dispute occurred in this district and the Defendants conduct business in this district.

## THE PARTIES

3. Liberty Surplus Insurance Corporation, (hereinafter, "LSIC"), is a New Hampshire corporation with its principal place of business located in the State of Massachusetts. **[Exhibit 1 – LSIC Policy.]**

4. Upon information and belief, Defendant Cryovac, Inc. (hereinafter, "Cryovac") is a Delaware Corporation with its principal place of business in Elmwood Park, New Jersey. Cryovac is in the business of packaging perishable food items, including but not limited to, meats and cheeses.

5. Upon information and belief, Defendant Sealed Air, Inc. d/b/a Cryovac (hereinafter, "Sealed Air), is a Delaware Corporation with its principal place of business in Charlotte, North Carolina. Sealed Air conducts a substantial amount of its business through Cryovac, Inc., one of its wholly-owned subsidiaries.

6. Upon information and belief, Southeast Poultry Inc. (hereinafter "Southeast Poultry"), is an Arkansas Corporation with its principal place of business in Rodgers, Arkansas. Southeast Poultry is in the business of processing and packaging poultry.

## FACTUAL ALLEGATIONS

7. At all pertinent times herein, LSIC provided specialty insurance covering the subject meat owned by the O.K. Industries.

8. This action arises out of a chicken contamination which resulted in property damage and loss of business profits.

9. O.K. Industries began utilizing Southeast Poultry to produce Boneless Skin-on-Leg Meat for sale into the Japanese market on or about February 2011.

10. Nearly all the chicken product produced to the Japanese market was sold to Day Lee Foods.

11. On May 30, 2011, O.K. Industries' shipment of chicken arrived at Day Lee's facility in Japan.

12. The plastic packaging covering the chicken was perforated in various spots.

13. The chicken was considered contaminated as a result of the perforated packaging

14. Upon information and belief, the plastic packaging was manufactured and supplied by Cryovac and/or Sealed Air

15. Upon information and belief, the contaminated packaged chicken was processed and supplied by Southeast Poultry.

16. As a result of the chicken being contaminated, O.K. Industries had to divert approximately 622,104 pounds of chicken to storage and cancel all chicken production while the matter was investigated.

17. The chicken contamination caused in excess of $1,400,000 in damages to O.K. Industries in the form of personal property damage and loss of business profits.

18. As a result of the loss, O.K. Industries made a first-party insurance claim to Plaintiff, who determined the chicken contamination was a covered loss under the policy and issued payment for some, but not all of the damage and lost profits, suffered by O.K. Industries.

19. As a result of these payments, Plaintiff Insurers are subrogated to O.K. Industries' third-party recovery rights, including any that exist against Cryovac, Sealed Air, and Southeast Poultry.

## COUNT I—STRICT PRODUCT LIABILITY
## CRYOVAC

20. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 19, as if fully restated herein.

21. At all material times, Cryovac was in the business of manufacturing, designing, assembling, producing, inspecting, testing, selling and/or otherwise placing into the stream of commerce plastic packaging materials, such as the plastic packaging bags at issue in this case.

22. Cryovac, in whole or in part, manufactured assembled, designed, produced, inspected, tested, sold and/or placed the plastic packaging bags into the stream of commerce.

23. At the time the Cryovac plastic packaging bag left the control of Cryovac, a defect existed that rendered it unreasonably dangerous.

24. Cryovac knew, or reasonably should have known, that the Cryovac plastic packaging bags would be used by O.K. Industries and/or other consumers without inspection for defects such as the defect which caused the loss.

25. The defect in the Cryovac plastic packaging bag caused the chicken contamination to occur.

26. The defect was not contemplated by the average consumer, like O.K. Industries.

27. The unreasonably dangerous and defective condition of the Cryovac plastic packaging bags were neither plainly apparent nor discoverable to O.K. Industries, or any other expected consumer, through a reasonable inspection.

28. Cryovac expected, or should have expected, the Cryovac plastic packaging bags would be used by O.K. Industries, or any other expected consumer, in the manner in which it was used at the time of the contamination, with no changes in the condition in which it left Cryovac's control.

29. The Cryovac plastic packaging bags were only used for their intended purpose and was not altered after it was manufactured by Cryovac.

30. As a direct and proximate result of the unreasonable and defective condition of the Cryovac plastic packaging bags, O.K. Industries sustained the damages described herein.

31. As further described herein, Plaintiff paid O.K Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Cryovac, in an amount to be proven at trial, together with costs, interest, expenses, fees and any other relief this Court deems just and appropriate.

## COUNT II—NEGLIGENCE
## CRYOVAC

32. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 31 as if fully restated herein.

33. Cryovac, at all pertinent times herein, owed a duty of care to all possible consumers of the Cryovac plastic packaging bags to design and manufacture it in a careful, safe, and

5

workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

34. Cryovac breached this duty through its acts or omissions including, but not limited to the following:

    a. failing to design and/or manufacture the Cryovac plastic packaging bags in a careful, safe, and proper manner, in compliance with all applicable standards;

    b. negligently designing and/or manufacturing the Cryovac plastic packaging bags so that it was unfit for its intended use;

    c. failing to use due care and safety to ensure that the design of the Cryovac plastic packaging bags would not cause an unreasonable risk of contamination;

    d. failing to take reasonable precautions to prevent the malfunction of the Cryovac plastic packaging bags and the risks stemming therefrom; and

    e. any other acts and omissions that may become known during the course of discovery.

35. The subject chicken contamination was a direct and proximate cause of the careless, negligent, reckless, and capricious acts and/or omissions of Cryovac.

36. O.K. Industries sustained extensive damages, as described herein, because of the subject contamination. As further described herein, Plaintiff paid O.K. Industries for said damages in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Cryovac, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## **COUNT III—BREACH OF WARRANTY**
## **CRYOVAC**

37. Plaintiffs hereby re-allege and incorporate by reference through 1 through 36, as if fully restated herein.

38. Cryovac expressly and impliedly warranted that the Cryovac plastic packaging bags were fit and safe for their intended use and purpose and that it was designed and manufactured in a good and workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

39. O.K. Industries, as an expected/anticipated consumer of the Cryovac plastic packaging bags, relied upon the skill, judgment, and reputation of Cryovac in designing and manufacturing it, thereby ensuring it would be safe and fit for its intended use and purpose, and of merchantable quality.

40. In breach of the aforesaid express and/or implied warranties, the Cryovac plastic packaging bags were unsafe and unfit for its intended use and purpose, was in a defective and unreasonably dangerous condition for an expected/anticipated user, and was not of merchantable quality in that it contained manufacturing, design, and product defects.

41. As a direct and proximate result of these warranty breaches, both express and implied, O.K. Industries suffered damages as described herein.

42. As further described herein, Plaintiff paid O.K. Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff Insurers respectfully request that this Court award to them a judgment against Defendant Cryovac, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## COUNT IV—STRICT PRODUCT LIABILITY
## SEALED AIR

43. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 42, as if fully restated herein.

44. At all material times, Sealed Air was in the business of manufacturing, designing, assembling, producing, inspecting, testing, selling and/or otherwise placing into the stream of commerce plastic packaging materials, such as the plastic packaging bags at issue in this case.

45. Sealed Air, in whole or in part, manufactured assembled, designed, produced, inspected, tested, sold and/or placed the plastic packaging bags into the stream of commerce.

46. At the time the plastic packaging bag left the control of Sealed Air, a defect existed that rendered it unreasonably dangerous.

47. Sealed Air knew, or reasonably should have known, that the plastic packaging bags would be used by O.K. Industries and/or other consumers without inspection for defects such as the defect which caused the loss.

48. The defect in the plastic packaging bag caused the chicken contamination to occur.

49. The defect was not contemplated by the average consumer, like O.K. Industries.

50. The unreasonably dangerous and defective condition of the plastic packaging bags were neither plainly apparent nor discoverable to O.K. Industries, or any other expected consumer, through a reasonable inspection.

51. Sealed Air expected, or should have expected, the plastic packaging bags would be used by O.K. Industries, or any other expected consumer, in the manner in which it was used at the time of the contamination, with no changes in the condition in which it left Sealed Air's control.

52. The plastic packaging bags were only used for their intended purpose and was not altered after it was manufactured by Sealed Air.

53. As a direct and proximate result of the unreasonable and defective condition of the plastic packaging bags, O.K. Industries sustained the damages described herein.

54. As further described herein, Plaintiff paid O.K Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Sealed Air, in an amount to be proven at trial, together with costs, interest, expenses, fees and any other relief this Court deems just and appropriate.

## COUNT V—NEGLIGENCE
## SEALED AIR

55. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 54 as if fully restated herein.

56. Sealed Air, at all pertinent times herein, owed a duty of care to all possible consumers of the plastic packaging bags to design and manufacture it in a careful, safe, and workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

57. Sealed Air breached this duty through its acts or omissions including, but not limited to the following:

    f. failing to design and/or manufacture the plastic packaging bags in a careful, safe, and proper manner, in compliance with all applicable standards;

    g. negligently designing and/or manufacturing the plastic packaging bags so that it was unfit for its intended use;

    h. failing to use due care and safety to ensure that the design of the plastic packaging bags would not cause an unreasonable risk of contamination;

    i. failing to take reasonable precautions to prevent the malfunction of the plastic packaging bags and the risks stemming therefrom; and

    j. any other acts and omissions that may become known during the course of discovery.

58. The subject chicken contamination was a direct and proximate cause of the careless, negligent, reckless, and capricious acts and/or omissions of Sealed Air.

59. O.K. Industries sustained extensive damages, as described herein, because of the subject contamination. As further described herein, Plaintiff paid O.K. Industries for said damages in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Sealed Air, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## COUNT VI—BREACH OF WARRANTY
## SEALED AIR

60. Plaintiffs hereby re-allege and incorporate by reference through 1 through 59, as if fully restated herein.

61. Sealed Air expressly and impliedly warranted that the plastic packaging bags were fit and safe for their intended use and purpose and that it was designed and manufactured in a good and workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

62. O.K. Industries, as an expected/anticipated consumer of the plastic packaging bags, relied upon the skill, judgment, and reputation of Sealed Air in designing and manufacturing it, thereby ensuring it would be safe and fit for its intended use and purpose, and of merchantable quality.

63. In breach of the aforesaid express and/or implied warranties, the plastic packaging bags were unsafe and unfit for its intended use and purpose, was in a defective and unreasonably dangerous condition for an expected/anticipated user, and was not of merchantable quality in that it contained manufacturing, design, and product defects.

10

64. As a direct and proximate result of these warranty breaches, both express and implied, O.K. Industries suffered damages as described herein.

65. As further described herein, Plaintiff paid O.K. Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff Insurers respectfully request that this Court award to them a judgment against Defendant Sealed Air, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## COUNT VII—STRICT PRODUCT LIABILITY
## SOUTHEAST POULTRY

66. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 65, as if fully restated herein.

67. At all material times, Southeast Poultry was in the business of processing, designing, assembling, producing, inspecting, testing, selling and/or otherwise placing into the stream of commerce packaged chicken product, such as the plastic packaged chicken product at issue in this case.

68. Southeast Poultry, in whole or in part, processed, assembled, designed, produced, inspected, tested, sold and/or placed the plastic packaged chicken product into the stream of commerce.

69. At the time the plastic packaged chicken product left the control of Southeast Poultry, a defect existed that rendered it unreasonably dangerous.

70. Southeast Poultry knew, or reasonably should have known, that the plastic packaged chicken product would be used by O.K. Industries and/or other consumers without inspection for defects such as the defect which caused the loss.

71. The defect in the plastic packaged chicken product caused the chicken contamination to occur.

72. The defect was not contemplated by the average consumer, like O.K. Industries.

73. The unreasonably dangerous and defective condition of the plastic packaged chicken product was neither plainly apparent nor discoverable to O.K. Industries, or any other expected consumer, through a reasonable inspection.

74. Southeast Poultry expected, or should have expected, the plastic packaged chicken product would be used by O.K. Industries, or any other expected consumer, in the manner in which it was used at the time of the contamination, with no changes in the condition in which it left Southeast Poultry's control.

75. The plastic packaged chicken product was only used for their intended purpose and was not altered after it was manufactured by Southeast Poultry.

76. As a direct and proximate result of the unreasonable and defective condition of the plastic packaged chicken product, O.K. Industries sustained the damages described herein.

77. As further described herein, Plaintiff paid O.K Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Southeast Poultry, in an amount to be proven at trial, together with costs, interest, expenses, fees and any other relief this Court deems just and appropriate.

### COUNT VIII—NEGLIGENCE
### SOUTHEAST POULTRY

78. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 77 as if fully restated herein.

79. Southeast Poultry, at all pertinent times herein, owed a duty of care to all possible consumers of the plastic packaged chicken product to design and assemble it in a careful, safe, and workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

80. Southeast Poultry breached this duty through its acts or omissions including, but not limited to the following:

- k. failing to design and/or manufacture the plastic packaged chicken product in a careful, safe, and proper manner, in compliance with all applicable standards;
- l. negligently designing and/or manufacturing the plastic packaged chicken product so that it was unfit for its intended use;
- m. failing to use due care and safety to ensure that the design of the plastic packaged chicken product would not cause an unreasonable risk of contamination;
- n. failing to take reasonable precautions to prevent the malfunction of the plastic packaged chicken product and the risks stemming therefrom; and
- o. any other acts and omissions that may become known during the course of discovery.

81. The subject chicken contamination was a direct and proximate cause of the careless, negligent, reckless, and capricious acts and/or omissions of Southeast Poultry.

82. O.K. Industries sustained extensive damages, as described herein, because of the subject contamination. As further described herein, Plaintiff paid O.K. Industries for said damages in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff respectfully request that this Court award to them a judgment against Defendant Southeast Poultry, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

<u>**COUNT IX—BREACH OF WARRANTY**</u>
<u>**SOUTHEAST POULTRY**</u>

83. Plaintiffs hereby re-allege and incorporate by reference through 1 through 82, as if fully restated herein.

84. Southeast Poultry expressly and impliedly warranted that the plastic packaged chicken product was fit and safe for their intended use and purpose and that it was designed and manufactured in a good and workmanlike manner, and in compliance with all applicable design, engineering, industry, safety and other applicable standards.

85. O.K. Industries, as an expected/anticipated consumer of the plastic packaged chicken product, relied upon the skill, judgment, and reputation of Southeast Poultry in designing and assembling it, thereby ensuring it would be safe and fit for its intended use and purpose, and of merchantable quality.

86. In breach of the aforesaid express and/or implied warranties, the plastic packaged chicken product was unsafe and unfit for its intended use and purpose, was in a defective and unreasonably dangerous condition for an expected/anticipated user, and was not of merchantable quality in that it contained manufacturing, design, and product defects.

87. As a direct and proximate result of these warranty breaches, both express and implied, O.K. Industries suffered damages as described herein.

88. As further described herein, Plaintiff paid O.K. Industries for the damages described herein in accordance with Plaintiff's policy of insurance.

WHEREFORE, Plaintiff Insurers respectfully request that this Court award to them a judgment against Defendant Southeast Poultry, in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38.

## **CERTIFICATION**

We hereby certify that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any such action or proceeding presently contemplated.

DATED: April 20, 2017                                  Respectfully Submitted,

/s/   *John A. Zohlman, III, Esq.*

**HAGNER & ZOHLMAN, LLC**
John A. Zohlman, III, Esq.
Thomas A. Hagner, Esq.
57 Kresson Road
Cherry Hill, New Jersey 08034
Tel: (856) 663-9090
Fax: (856) 663-9199
Email: jzohlman@hzlawpartners.com
Email: tahagner@hzlawpartners.com

And

**DENENBERG TUFFLEY PLLC**
Paul A. Casetta, Esq.
*Pending Pro Hac Vice Admission*
Michael R. Marx, Esq.
*Pending Pro Hac Vice Admission*
28411 Northwestern Hwy., Suite 600
Southfield, Michigan 48034
Tel: (248) 549-3900
Fax: (248) 593-5808
Email: pcasetta@dt-law.com
Email: mmarx@dt-law.com
*Attorneys for Plaintiff*